# EXHIBIT A

DB

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

JOHN KOZMA and WENDY KOZMA
as Co-Guardians of JODI RENEE KOZMA,

    Plaintiffs,

-vs-

CITY OF LIVONIA, a municipal corporation,
LIVONIA POLICE DEPARTMENT, SGT. GIBBS,
OFFICER CAMMARATA, OFFICER SULLIVAN,
OFFICER SALTER and OFFICER SCHROEDER,

and

Wal-Mart Stores, Inc., AMANDA GOLINSKE, *an
individual* and AMILCAR IRELAND, *an individual*,
CHRISTOPHER PRESTON II, *an individual*,
*jointly and severally*,

    Defendants.

Case No: 2014 - CZ
Hon.

14-005952-CZ
FILED IN MY OFFICE
WAYNE COUNTY CLERK
5/7/2014 8:16:53 AM
CATHY M. GARRETT

---

**DEBORAH GORDON LAW**
Gordon, Laughbaum & Prescott
Deborah L. Gordon (P27058)
Sarah S. Prescott (P70510)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
248-258-2500/FAX 248-258-7881
dgordon@deborahgordonlaw.com
sprescott@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

1

Plaintiffs JOHN KOZMA and WENDY KOZMA as Co-Guardians of JODI RENEE KOZMA, by their attorneys **Deborah Gordon Law**, complain against Defendants as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action arising out of the violation of Jodi Kozma's Fourth and Fourteenth Amendment rights, brought pursuant to 42 USC § 1983; the violation of Jodi Kozma's rights as a disabled person under the Persons with Disabilities Civil Rights Act, and civil harms committed by Defendants against Plaintiffs.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiffs reside in Oakland County, Michigan.

3. The City of Livonia is a municipal corporation located in the County of Wayne.

4. Defendant Livonia Police Department is a municipal law enforcement agency organized and existing under the laws of the State of Michigan, and is located in the County of Wayne.

5. Police Officers Cammarata, Sullivan, Salter and Schroeder and Sgt. Gibbs are employed by Defendant City of Livonia and are sued jointly and severally in their official and personal capacities.

6. Each Defendant discussed above is a "person" within the meaning of 42 U.S.C. § 1983.

7. Wal-Mart Stores, Inc., is a retail store and a place of public accommodation located and doing business in City of Livonia, County of Wayne, State of Michigan.

8. Amanda Golinske, Christopher Preston II, and Amilcar Ireland were at times pertinent, employees of Defendant Wal-Mart Stores, acting as Asset Prevention agents, known as "AP," or "AP team."

2

9. Defendants' actions complained of herein occurred in the City of Livonia, County of Wayne, State of Michigan.

10. The amount in controversy exceeds $25,000.00.

## FACTS

### GENERAL

11. Jodi Renee Kozma (hereinafter "Jodi") is 25-years old.

12. Plaintiffs John and Wendy Kozma assert Jodi's claim as Jodi's legal guardians and next friends.

13. Jodi is disabled; at birth she was diagnosed with hypoxia and persistent fetal circulation. As a result she is mentally impaired.

14. Jodi's IQ score is in the range of 50-60.

15. Jodi is a student in an alternative education program where she is taught daily life skills.

16. Her parents, John and Wendy Kozma, are her legal guardians.

17. Jodi does not go to public locations without supervision.

18. When they are in public places together, such as a store, the Kozma family has a practice of keeping in constant contact with Jodi via text message and calls to her cell phone.

19. This practice allows Jodi to navigate familiar locations without close family supervision, which promotes Jodi's independence, and also ensures that Jodi is safe.

### THE STOP

20. On August 3, 2012; at approximately 5:30PM, Jodi Kozma entered the Wal-Mart North Livonia, located at 29574 W. Seven Mile Road in Livonia, Michigan 48152 (hereinafter "the store") with her 72-year-old grandmother, Janice Dodd, and her cousin, Jennifer Dodd.

3

21. After shopping for approximately thirty-five minutes, and paying for their items at terminal number 18, Jodi, Janice, and Jennifer proceeded toward the exit of the store.

22. As the family approached the exit, two plain-clothes Wal-Mart Asset Protection (hereinafter "AP") team members, Ireland and Preston, surrounded Jodi in the lobby and blocked her pathway to the door. AP did not identify themselves as AP or Wal-Mart employees.

23. An AP team member accused Jodi of retail fraud and concealing something in the waistband of her pants.

24. It is uncontested that the AP team was incorrect; there was no retail fraud.

25. AP surrounded Jodi and corralled her to the customer service area, a semi-walled area near the front of the store, in an effort to get her into the Wal-Mart security room.

26. Jodi became afraid and upset.

27. Janice Dodd informed the AP team that Jodi is disabled, specifically that she is mentally challenged, and would not take an item with the intent to steal.

28. Janice Dodd requested the AP team remain calm and allow the family to assist Jodi. The AP team refused this requested accommodation.

29. Jodi reached her mother Wendy, by calling her cell phone. Jodi informed Wendy that men were trying to take her from the store. Wendy instructed Jodi to go to the customer service area. Jodi did so.

30. Wendy Kozma immediately left to drive to the store.

31. In the meantime, the AP team continued to escalate the situation by approaching Jodi, requesting her to enter the security room, and asking her questions about theft.

4

32. Jodi was very afraid. Her grandmother attempted to calm her but was not allowed to do so by the AP team.

33. Janice Dodd requested that Defendants accommodate Jodi by stepping back and waiting for her mother to arrive, and that in the meantime, she would search the shopping bags and talk to Jodi.

34. The AP team did not accommodate these simple requests, which would have ended the event on the spot in that there was not retail fraud.

35. After being stopped by the AP team, Jodi never attempted to leave the store.

### THE 911 CALL

36. Instead of waiting for Jodi's guardian to arrive, or allow her grandmother to comfort and calm Jodi, Defendant Wal-Mart and AP team members called Defendant Livonia Police Department.

37. Defendant Officer Schroeder answered the 911 call.

38. The AP team member informed Officer Schroeder that AP suspected Jodi of retail fraud.

39. The AP team member informed Officer Schroeder that the Kozma family had informed them that Jodi has "special needs."

40. Officer Schroeder dispatched units to the store, and clearly recognized that the situation involved, at most, the potential theft of an inexpensive item. Specifically, Officer Schroeder asked the AP team member whether the alleged theft even amounted to the jurisdictional amount necessary to charge a crime. The AP team member responded that she did not know.

5

41. The AP member reconfirmed with Officer Schroeder that Jodi had special needs before the call ended as well.

## POLICE ARRIVAL

42. Defendant Officers Cammarata, Sullivan, Salter, and Sgt. Gibbs responded to the call in two marked police cruisers.

43. The officers arrived at the store in a storm/swat-like approach, parking the cruisers on the sidewalk directly in front of the store doors, partially blocking egress.

44. At approximately 6:23pm, the officers entered the store.

45. The officers spoke with AP and were again informed that Jodi was mentally challenged.

46. Approximately 10 yards away near the customer service desks, Janice was soothing her distraught granddaughter.

47. Janice explained to the officers that there was a misunderstanding, that she had checked Jodi's person for products and found nothing, that she had a receipt of payment for the goods alleged stolen, and that Jodi is disabled and could not comprehend the situation. She requested that the Defendants accommodate Jodi by not scaring her, allowing her to calm down, and wait for her mother to arrive.

## USE OF EXCESSIVE FORCE

48. In spite of knowing that Jodi was impaired, that her mother/legal guardian would be arriving soon, that her grandmother and cousin were present and cooperative and there was no attempt by Jodi to leave the store, the Defendant Police Department, Officers and AP team made a decision to deny all the reasonable requests to accommodate Jodi. Instead, they escalated the situation, making Jodi more fearful.

49. The four officers, walking shoulder to shoulder, corralled Jodi into a semi-walled area at the front of the store.

50. Janice Dodd ran her hand within the waist line of Jodi's pants, demonstrating that Jodi had no items.

51. Furthermore, Janice Dodd produced a receipt proving payment for the alleged stolen hair ties, which had a value of a few dollars.

52. Janice Dodd explained that Jodi kept her cell phone on her waist band.

53. The Defendant Officers disregarded Janice Dodd's display of the receipt proving payment for the alleged stolen item.

54. The officers pushed Jodi back into the semi-walled area, preventing her from communicating with Janice. Jodi had no means of escape.

55. An officer ordered Jodi to put her hands behind her back.

56. Jodi did so immediately and without resistance.

57. Janice, realizing the severe harm that would be inflicted by an arrest, took several steps toward Jodi and again pleaded with the officers to stop and wait for her mother and legal guardian to arrive but was immediately restrained by an officer and pushed back toward the doorway.

58. Defendant Officers threatened Janice that she would be handcuffed if she did not stand back.

59. There was no reason for the Defendants not to simply step back, allow Janice to calm Jodi, and wait for her mother and guardian to arrive. There was no risk of Jodi leaving the store and she posed no danger to herself, the officers, of fellow customers.

60. Officer Sullivan restrained Jodi and began to apply handcuffs to her wrists.

7

61. Jodi, terrified, cried out for her grandmother.
62. A second officer, Officer Salter, grabbed Jodi's right arm and wrestled Jodi toward his body.
63. Officer Salter and Sullivan threw Jodi to the Floor.
64. Jodi fell onto her chest, Officer Sullivan landing next to Jodi, gripping her arms, and Officer Salter landing on top of Jodi.
65. Defendant Officers then applied excessive pressure to Jodi's upper back, causing Jodi to become temporarily asphyxiated.
66. Defendant Officers Salter, Sullivan and Cammarata lifted Jodi from the floor by her arms and handcuffs and led her to the security room at the front of the store.

## THE DETENTION

67. Defendant officers prevented Janice and Jennifer Dodd from entering the security room, where Jodi was being held.
68. Wendy Kozma arrived at the store with guardianship papers in hand.
69. Officers and AP prevented Wendy Kozma from entering the security room.
70. Jodi was interrogated for several minutes outside the presence of Wendy Kozma.
71. Officers interrogated Jodi regarding the shoplifting, repeatedly asking Jodi where she had hid goods.
72. Jodi could not effectively respond to the officers' inquiries because of her disability. The officers refused to accommodate Jodi's mentally impaired condition, repeatedly asking Jodi questions she could not understand.
73. After several moments of insisting, Wendy Kozma was able to gain entry to the room.
74. With her mother's assistance the officers searched Jodi's purse, and found nothing.

75. An officer threatened that he would conduct a body search if necessary.

76. In order to avoid this potential, needless trauma to her daughter, Wendy Kozma began to search Jodi's person, under the pressure of Defendant Officers, lifting the legs of her daughter's pants, opening her daughter's waistband and lifting up and shaking out her daughter's shirt.

77. Jodi complied and cooperated.

78. After approximately 15 minutes of interrogation wherein officers searched Jodi's purse, threatened to search Jodi's person, and watched Wendy Kozma as she frantically searched her daughter, Defendant Officers realized that Jodi had not taken any goods and allowed her to leave.

## ADDITIONAL COMMON ALLEGATIONS

79. The acts of the individual police Defendants alleged in this Complaint represent official policy and custom of and are attributable to the Defendant City and Police Department for which such individuals worked.

80. The acts of the Police Defendants complained of were under color of state law and undertaken in concert among the named police Defendants.

81. On information and belief, supervisory officials having final policymaking authority for the Defendant Police Department and its officers named in this Complaint had knowledge of the conduct complained of.

82. With regard to the constitutional deprivations alleged herein, it would have been plainly obvious to a reasonable official and/or policymaker that the conduct described did deprive or would lead to deprivations of Plaintiffs' constitutional rights.

83. Upon information and belief, supervisory officials having final policymaking authority the Defendant Police Department nevertheless agreed to, approved, and/or ratified the unconstitutional conduct alleged.

84. Upon information and belief, the Defendant Police Department, by and through its supervisory officials having final policymaking authority, further failed to train. This failure to train led directly to the constitutional deprivations alleged below.

85. Upon information and belief, Defendant police department also failed to intervene in a custom of its employees of violating individuals' constitutional rights. This failure led directly to the constitutional deprivations alleged below.

86. The conduct described in this Complaint was neither privileged nor immune, reflecting at a minimum (and unless otherwise stated) gross negligence because it was so reckless that it demonstrated a substantial lack of concern for Plaintiffs' physical and emotional wellbeing.

## COUNT I

### Violation of 42 U.S.C. § 1983
### Violation of Plaintiffs' Fourth and Fourteenth Amendment Rights against Police Department, City of Livonia, and Individual Police Officers

87. Plaintiffs incorporate by reference their allegations contained in paragraphs 1 through 86, of this complaint.

88. Jodi Kozma had the right to be protected from the use of excessive force and unreasonable search and seizure, guaranteed by the Fourth Amendment to the United States Constitution, and incorporated against the States by the Fourteenth Amendment. Plaintiffs Mr. and Mrs. Kozma assert her claim as Jodi's legal guardians and next friends.

89. The individual police Defendants violated Plaintiffs' Fourth Amendment rights, as set forth above, by use of excessive force and unlawfully searching and seizing and arresting Jodi Kozma. The individual police Defendants are liable in their official and personal capacities for their conduct.

90. Defendant City and Defendant Police Department violated Plaintiffs' constitutionally protected right against the use of excessive force and unreasonable search and seizure when the individual police Defendants participated in the unlawful search, seizure, arrest, use of excessive force and detention of Jodi Kozma, and when the supervisory Defendants failed to train and failed to intervene in and later ratified the constitutional violations.

91. Defendants promulgated and/or carried out the acts and omissions, official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard and deliberate indifference for the civil and constitutional rights, privileges and sensibilities of Plaintiffs.

92. As a direct and foreseeable consequence of Defendants' acts, omissions, policy decisions, failure to train, and failure to intervene in a custom of violating individuals' constitutional rights, Jodi Kozma was deprived of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and thereby suffered loss of her freedom, economic damages, and severe emotional injury.

## COUNT II

### Intentional Infliction of Emotional Distress against all Defendants

93. Plaintiffs incorporate by reference their allegations contained in paragraphs 1 through 92, as though fully set forth herein.

94. Defendants' conduct as outlined above was intentional.

11

95. Defendants' conduct as outlined above was extreme, outrageous, and beyond all possible bounds of decency, and of such character as to be intolerable in a civilized society.

96. Defendants' conduct was not for any proper purpose, nor was it within the scope of Defendants' authority.

97. Defendants' conduct caused the severe and serious emotional distress of Plaintiffs.

98. Defendants' conduct in this matter, which proximately caused Plaintiffs' injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Plaintiffs' physical and emotional wellbeing.

99. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered fear, trauma, humiliation, mortification, severe emotional disturbances, sleeplessness and anxiety, and other damage that may arise during the course of discovery.

## COUNT III

### Assault and Battery against Livonia Defendants and Individual Police Officers

100. Plaintiffs incorporate by reference their allegations contained in paragraphs 1 through 99, as though fully stated herein.

101. Defendants intended to cause a harmful or offensive contact with Jodi Kozma.

102. Defendants placed Jodi Kozma in great fear of harmful physical contact.

103. Defendants set in motion a series of actions that resulted in offensive and harmful, unwanted bodily contact.

104. Defendants' conduct as outlined above was intentional.

105. Defendants' conduct was not privileged, not carried out for any proper purpose, nor was it within the scope of Defendants' authority.

12

106. Defendants' conduct in this matter, which proximately caused Plaintiffs' injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Plaintiffs' physical and emotional wellbeing.

107. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered fear, trauma, humiliation, mortification, severe emotional disturbances, physical injuries, sleeplessness and anxiety, and other damage that may arise during the course of discovery.

### COUNT IV

### Violation of the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq. against Defendants City of Livonia, Livonia Police Department and its Individual Employees

108. Plaintiffs repeat and reallege paragraphs 1 through 107 as if set forth fully herein.

109. Jodi Kozma is a person with a disability, as that term is defined by the Persons with Disabilities Civil Rights Act, MCL § 37.1301, because she has determinable characteristics that substantially limit one or more of her life activities, which limitations are unrelated to her ability to enjoy public accommodations and services.

110. Defendant City and Police Department are public services or accommodations as defined by MCL § 37.1301.

111. Defendants denied Plaintiff Jodi Kozma reasonable accommodations in the course of affording a public accommodation or public services, contrary to MCL § 37.1302.

112. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered fear, trauma, humiliation, mortification, severe emotional disturbances, physical injuries, sleeplessness and anxiety, and other damage that may arise during the course of discovery. Plaintiff may be irreparably harmed if not granted injunctive relief.

13

## COUNT V

### Violation of Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq. against Defendants Wal-Mart Stores, Inc., and its Individual Employees

113. Plaintiffs repeat and reallege paragraphs 1 through 112 as if set forth fully herein.

114. Defendant Wal-Mart Store, Inc. is a "person" under the Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq., specifically, MCL 37.1103(g).

115. Defendant Wal-Mart Stores, Inc. owns and operates a "place of public accommodation" under the Persons with Disabilities Civil Rights Act, MCL 37.1101, MCL 37.1102, MCL 37.1301 and MCL 37.1302.

116. Defendant Wal-Mart Stores, Inc. and its employees violated the Persons with Disabilities Civil Rights Act by failing to provide Plaintiff Jodi Kozma with full and equal utilization of public accommodations without discrimination because of a disability; by failing to accommodate Plaintiff's disabilities, an accommodation that would not have created an undue burden for Defendant Wal-Mat Stores, Inc., and by denying Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations provided by Defendant Wal-Mart Stores, Inc. because of plaintiff's disability.

117. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered pain, fear, trauma, emotional distress, humiliation, mortification, physical injuries, embarrassment and any other injuries and damages that may arise during the course of discovery.

### RELIEF REQUESTED

For all the foregoing reasons, Plaintiffs demand judgment against Defendants as follows:

14

**Legal Relief:**

1. Compensatory damages in whatever amount Plaintiffs are found to be entitled;

2. Exemplary damages in whatever amount Plaintiffs are found to be entitled;

3. Punitive damages in whatever amount Plaintiffs are found to be entitled; and

4. An award of interest, costs and reasonable attorney fees.

**Prospective Injunctive (Equitable) Relief:**

1. An injunction out of this Court (a) requiring Defendants City and Defendant Police Department to provide to all police personnel who interact with the public at least eight hours of training annually on appropriate methods of resolving calls involving those with special needs; (b) after one year, prohibiting Defendants from permitting employees or agents to interact with the public, without properly documented annual training in appropriate techniques for handling those with special needs.

2. An award of interest, costs and reasonable attorney fees.

3. Whatever other equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,

**DEBORAH GORDON LAW**
**Gordon, Laughbaum & Prescott**
/s/Deborah L. Gordon (P27058)
Sarah S. Prescott (P70510)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
248 258 2500
dgordon@deborahgordonlaw.com
sprescott@deborahgordonlaw.com

Dated: May 6, 2014

## JURY DEMAND

Plaintiffs, JOHN KOZMA and WENDY KOZMA as Co-Guardians of JODI RENEE KOZMA, by their undersigned counsel, **Deborah Gordon Law**, demand a trial by jury of all the issues in this case.

Dated: May 6, 2014

**DEBORAH GORDON LAW**
**Gordon, Laughbaum & Prescott**
/s/Deborah L. Gordon (P27058)
Sarah S. Prescott (P70510)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
248-258-2500
dgordon@deborahgordonlaw.com
sprescott@deborahgordonlaw.com