UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN KOZMA and WENDY KOZMA, as Co-Guardians of JODI RENEE KOZMA,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LIVONIA, et al.,<br><br>Defendants. | Case No. 14-12268<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL REHEARING OR RECONSIDERATION [46] AND DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF [47]**

Interpreting the record in the light most favorable to the Plaintiff supports that two Livonia police officers wrestled a mentally disabled woman, Plaintiff Jodi Kozma, to the ground after they mistakenly suspected she had tried to steal a $3.87 hair tie from a Walmart—even though they admitted she posed no threat. Once they had her on the ground, some evidence indicates that one of the officers applied pressure to her back, making it difficult for her to breathe—even though they admitted she did not resist them.

This Court recently issued an opinion and order granting in part and denying in part Defendants' motion for summary judgment. (Dkt. 45, Order.) The Court held that the officers were entitled to qualified immunity for Kozma's § 1983 false arrest claim because, though the officers were ultimately proved wrong, they had probable cause to arrest her for shoplifting. The Court also held that of the four officers on the scene, two were entitled to summary judgment for Kozma's excessive force claim because they were mere bystanders. The case was not dismissed,

however, because the Court held that the two officers who forced Kozma to the ground during the arrest, Salter and Sullivan, were not entitled to qualified immunity.

Defendants now seek rehearing or reconsideration, raising two main arguments. (Dkt. 46, Defs.' Mot.) First, Defendants argue that the Court erred in concluding that there was evidence suggesting that officers applied pressure or force to Kozma's back after she was subdued or compliant. Second, Defendants assert that qualified immunity must apply because the officers were at least "reasonably mistaken with regard to the effort to take Jodi Kozma to the ground." (Dkt. 46.) The Court has reviewed its decision in light of these arguments and concludes that there is no basis for altering it. And a hearing is not necessary to reach that conclusion.

## I.

The Local Rules of this district provide that a motion for reconsideration may be granted when the moving party can "demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled," and "show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002) (citations omitted). The Local Rules further provide that any "motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." E.D. Mich. LR 7.1(h)(3).

## II.

### A.

In three separate sections of their brief, Defendants take issue with the Court's conclusion that a reasonable jury could find that the officers put pressure on Kozma's back when she was

compliant. For instance, in a section of their brief titled "Inference v. Speculation," Defendants argue that "while the Court has stated that it has drawn an inference from the record," namely that an officer put pressure on Kozma's back when she was compliant, "[the Court] has instead articulated a possibility that is merely allowed by the record." (Defs.' Mot. at 6.)

The Court finds no palpable defect in its ruling on this issue. As the video of the incident does not show this portion of the struggle, the Court relied on testimony from eyewitnesses. And viewing the evidence in the light most favorable to Kozma, officers put significant pressure on her back. For instance, Kozma's grandmother testified that she saw "Jodi on the ground with this guy on her with his knees in her back. All his weight on her." (Dkt. 44, Pl.'s Resp. to Defs.' Mot. Summ. J., Ex. M, Jennifer Dodd Dep. at 41.) Kozma herself testified that while on the ground, she had trouble breathing and felt like she was going to die. (Pl.'s Resp., Ex. S, Jodi Kozma Dep. at 44.) Furthermore, again viewing the evidence in the light most favorable to Kozma, she was not resisting at that time. Specifically, Officer Salter testified that once they brought Kozma down, "[t]here was no chance to resist at that point." (Pl.'s Resp. Ex. V, Salter Dep. at 126, 128.) Similarly, Officer Cammarata said she was "for the most part" compliant. (Pl.'s Resp. Ex. K, Cammarata Dep. at 209.)

Defendants seem to urge that testimony from Valeria Graves, an eyewitness shopper, undercuts these conclusions. (Defs.' Mot. at 2–4, 7.) But the Court did not rely entirely on her testimony, which was at best ambiguous. On one hand, the Court agrees with Defendants that some of Graves' testimony supports the conclusion that, as Defendants put it, the officers "took her down, held her down, handcuffed her, and brought her up in quick sequence." (Defs.' Mot. at 3.) For instance, Graves said that after they handcuffed Kozma, while she could not remember, "I would assume they got her right up." (Pl.'s Resp. Ex. Q, Graves Dep. at 71–72.) But then

3

again, the video evidence suggests that officers had Kozma on the ground for around 45 seconds. (Pl.'s Resp. Ex. B at 0:53–1:36.) On the other hand, Graves also testified that when an officer had his knee in Kozma's back, she was "squirming" but "wasn't refusing." (*See* Graves Dep. at 16, 23.) That squirming may well have been resistance. But it could also have been an involuntary response to the officer's pressure.

Given these circumstances—including eyewitness accounts that do not fully overlap and gaps and shortcomings in the video evidence—a jury must decide what happened and whether the officers' force was reasonable.

## B.

Defendants next essentially argue that the Court skipped the second step of the qualified immunity analysis for Kozma's excessive force claim, (*see* Defs.' Mot. at 11), which requires the Court to assess whether the constitutional right allegedly violated was "clearly established," *see Leary v. Livingston Cty.*, 528 F.3d 438, 441 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The Court notes that Defendants barely addressed the second prong of qualified immunity in their summary-judgment briefs. In their opening brief, Defendants laid out the standards regarding qualified immunity (Defs.' Mot. at 19–22), and reserved argument for their reply brief, (Defs.' Mot. at 36–37). But in reply, Defendants simply asserted that Plaintiffs waived any argument on qualified immunity for the excessive claim due to "substantive silence," (Defs.' Reply at 10), despite that Kozma did argue for why the officers' conduct satisfied the second prong of qualified immunity, (Pl.'s Resp. at 35–36).

In any event, the Court sees no reason to disturb its findings concerning qualified immunity for the excessive force claim. Defendants urge that "qualified immunity does not turn

on whether a jury might find the force excessive" and that "[t]he test should focus on the reasonable officer, not the reasonable jury." (Defs.' Mot. at 11.) But it is up to a jury to decide what exactly transpired. Thus, under the first prong of qualified immunity—which here required assessing whether a reasonable jury could find excessive force—the Court found that two of the three factors for excessive force articulated in *Graham v. Connor*, 490 U.S. 386, 397 (1989), weighed well in Kozma's favor: the officers suspected her of at most a minor shoplifting offense, (Gibbs Dep. at 83), and all agreed that she posed no threat, (Sullivan Dep. at 97; Gibbs Dep. at 109–110; Salter Dep. at 99; Cammarata Dep. at 152). And the Court found that while Kozma did not willingly allow herself to be handcuffed before they forced her to the ground, a reasonable jury could find that Salter and Sullivan "threw" or "manhandled" her to the ground. This was Graves' testimony. (Graves Dep. at 69.) And as the Court discussed, the imperfect video evidence did not negate the possible accuracy of that testimony. Furthermore, the evidence suggested that once the officers forced her to the ground, they put pressure on her back significant enough to make it difficult for her to breath despite her compliance at that point.

Thus, on these facts a reasonable jury could find that the officers "threw" down or "manhandled" a harmless mentally disabled woman for essentially no reason other than that she did not immediately allow officers to handcuff her for a minor shoplifting offense—when she was understandably confused about the false accusations lodged at her—and then put pressure into her back once she was on the ground and compliant. Assuming a jury found that is what happened, that would mean the officers' actions contravened clearly established law: the Fourth Amendment prohibits "gratuitous violence during an arrest," *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006).

In its prior opinion, the Court further concluded that if a jury found that the officers put significant pressure on Kozma's back at a time when she was subdued, that would have also violated clearly established law. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (holding that it is "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force").

Defendants take issue with this finding for two key reasons. First, Defendants say that there is no evidence of "substantial or significant" pressure. (Defs.' Mot. at 15.) But as discussed above, Kozma's grandmother testified that an officer had all of his weight on her, and Kozma herself testified that she could not breathe. Second, Defendants urge that "claiming one was held down too much or too long should be properly analyzed under the law like the handcuff cases." (Defs.' Mot. at 16.) Yet in handcuffing cases, a plaintiff must show: "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *See Morrison v. Bd. Of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575–76 (6th Cir. 2005)). So even if this standard applied, which no case so holds, qualified immunity would still be inappropriate. Kozma screamed throughout the duration of the encounter—given her mental disability, this could have been her best effort to complain that the officers were too forceful. (Dkt. 34, Defs.' Mot. Summ. J. Ex. M at 18:24:29–18:25:30.) Second, as the officers apparently held her down for 45 seconds and Kozma said she felt like she was going to die, a reasonable jury could find they ignored her complaints. And finally, Kozma claims that she suffered injury, in the form of bruising. (Pl.'s Resp. Ex. G, Photos; Wendy Kozma Dep. at 108–112.)

Finally, Defendants assert that the Court erred by relying on cases that suggest officers must de-escalate force when confronted with someone with diminished mental capacity. (Defs.' Mot. at 16–18.) For instance, in *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004), the Sixth Circuit held, "The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted." Defendants have cited no authority to support their contention that *Champion* does not "mandate" officers to use less force when confronting someone with a diminished mental capacity. This is not surprising, as the Sixth Circuit has subsequently characterized *Champion* as "*requir[ing]* . . . officers to de-escalate the situation and adjust the application of force downward" when confronted with such a person. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013) (emphasis added). Defendants' suggestion that *Champion* should not even apply because, "there is no record evidence that Ms. Kozma was in a state of excited delirium" (Defs.' Mot. at 18), is not well taken. For one, it is illogical to suggest that any requirement to use less force on someone who is mentally diminished applies only when the person is volatile instead of calm. Moreover, even if "excited delirium" were required to trigger this duty of de-escalation, Defendants do not acknowledge the evidence, as noted above, that someone—likely Kozma—was screaming quite loudly throughout the ordeal.

### III.

For these reasons, Defendants have not demonstrated that the Court committed any palpable error in partially denying their motion for summary judgment. Thus, Defendants' Motion for Partial Rehearing or Consideration (sic) (Dkt. 46) is DENIED.

Finally, in response to Plaintiff's January 11, 2016 letter to the Court attaching a recent

Sixth Circuit case addressing excessive force, *Kent v. Oakland Cty.*, No. 14-2519, 2016 WL 66566, — F.3d —, (6th Cir. Jan. 6, 2016), Defendants filed a Motion for Leave to File Supplemental Brief (Dkt. 47). Defendants say that Plaintiff's two sentence letter informing the Court of this recent authority, amounts to an unauthorized brief responding to its motion for reconsideration. While Plaintiff's letter was unnecessary, as the *Kent* opinion does not give the Court any reason to alter its holdings in this case, no supplemental briefing is necessary, and Defendants' Motion for Leave to File Supplemental Brief (Dkt. 47) is DENIED.

      SO ORDERED.

                                s/Laurie J. Michelson
                                LAURIE J. MICHELSON
                                UNITED STATES DISTRICT JUDGE

Dated: January 25, 2016

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 25, 2016.

                                s/Jane Johnson
                                Case Manager to
                                Honorable Laurie J. Michelson